In the Matter of Marlon Dale
RAMOS, Petitioner,

v.

PYRAMID TRIBAL COURT, BUREAU
OF INDIAN AFFAIRS, and Marilyn
Jones, Acting Captain of the BIA Jail
Facility, Respondents.

No. CV–R–84–375–ECR.

United States District Court,
D. Nevada.

Jan. 8, 1986.

David Dean, Reno, Nev., for petitioners.

Shirley Smith, Asst. U.S. Atty., Reno,
Nev., for respondents.

## ORDER

EDWARD C. REED, Jr., District Judge.

This Court, by order dated October 30, 1985, 621 F.Supp. 967, (document # 36), found no support for a writ of habeas corpus on several issues presented by petitioner. We also, however, ordered petitioner and respondent to file contemporaneous briefs on the issue of whether the presiding judge at petitioner's trial possessed legal authority. These briefs, as well as affidavits in support of the parties' positions, were timely filed with the Court. Because the affidavits presented to this Court contained conflicting statements as to whether the presiding judge, Judge Whitehead, had been requested to remain and continue his service to the Tribe beyond the resignation date, we took evidence at a hearing on December 20, 1985. The sole issue at the hearing and now before this Court is petitioner's argument in support of his petition for a writ of habeas corpus that because Judge Whitehead resigned as of March 15, 1984, and the Tribal Council accepted this resignation, that Judge Whitehead possessed no legal authority to try and sentence petitioner on April 30, 1984. In opposing this argument, respondent argues that Judge Whitehead operated as a judge *de facto*. Because we find that Judge Whitehead served in the capacity of a *de facto* judge at petitioner's trial, the writ of habeas corpus will be denied.

## ANALYSIS

*Judge de facto* is defined as:

One who holds and exercises the office of a judge under color of lawful authority and by a title valid on its face, though he has not full right to the office, as where he was appointed under an unconstitutional statute, or by an usurper of the appointing power, or has not taken the oath of office.

Black's Law Dictionary 5th Ed. 755. A judge who in complete good faith continues to hold court beyond the term for which he was assigned may be considered a *de facto*

judge. *Oklahoma Transp. Co. v. Lewis*, 177 Okl. 106, 58 P.2d 128, 129 (1936).

In *Oklahoma Transp. Co. v. Lewis*, the Oklahoma Supreme Court held that when the parties failed to object to a nonresident district judge presiding over a trial after his assignment to hold court had expired, the judge was a *de facto* judge and no error occurred. *Id.*, 58 P.2d at 130–131. The court relied in part on the general rule that objections to the authority of an assigned judge may be waived if not promptly made by the parties. *Id.*, 58 P.2d at 130. The court also noted that the judge acted in good faith and merely presided as judge beyond the term of his lawful assignment. *Id.*, 58 P.2d at 129.

The Fifth Circuit also found no merit to set aside judgment of convictions based upon an attack of the sentencing judge's authority. *Barnhill v. United States*, 305 F.2d 158 (5th Cir.1962). The Chief Justice of the United States had designated a district judge from the Southern District of California "to perform the duties of District Judge and to hold a District Court in the Southern District of Florida during the period beginning August 17, 1959, and ending September 18, 1959, and for such further time as may be required to complete unfinished business." *Id.* at 159. Prior to the September date, the judge had entered several orders in the cases and continued to rule on various matters including entering judgments against the defendants and imposing sentence. *Id.* The court found that the matters attended to following the end of his designation were unfinished business and that the judge had proper authority to sentence the defendants. *Id.* at 160.

Thus, while there is some authority for the proposition that the authority of a judge may extend beyond his or her term, that power must still be pursuant to constitutional and statutory provisions under which the judge was originally selected. The constitutional and statutory provisions for the appointment of judges by the Pyramid Lake Paiute Tribe are found in Article V of the constitution and Chapter 3.03 of the Pyramid Lake Paiute Tribal Code. The Tribal Council constitutionally established a Tribal Court pursuant to Art. V Sec. 1(a). The Law and Order Committee of the Tribal Council recommends to the Tribal Council persons to be appointed as judge. Chapter 3.03.013. Final selection is made by a two-thirds vote of the Tribal Council. *Id.* There is no argument that Judge Whitehead was originally lawfully appointed to a legitimate position.

Judge Whitehead's resignation letter which the tribal council accepted, stated that Judge Whitehead would be happy to assist the council in any way that he could. Respondent's Exhibit # 1. Although not explicitly addressing himself to continuing as judge beyond the March 15, 1984, resignation date, a fair reading of his offer of help would certainly include the offer to continue to serve should there be any problem finding a replacement. Judge Whitehead's letter of resignation was accepted by a unanimous vote of the Tribal Council. The letter refers to March 15, 1984, as the effective date of the resignation. *Id.*

The minutes of the March Tribal Council meeting reflect that on March 2, 1984, discussion was held as to Judge Whitehead's resignation. At page 3 of the minutes, it is noted that "Jerry [Judge Whitehead] is going to sit in until we get a new judge." Respondent's Exhibit # 2. Later in the meeting and reported at page 7 of the minutes, a motion was made to accept Jerry Whitehead's resignation as Chief Tribal Judge. *Id.* The motion passed unanimously. The minutes were approved at the next council meeting. Respondent's Exhibit # 3. The logical and clear reading of this, taking into account the sequence of the actions, is that the Tribal Council accepted his resignation on the grounds that he would continue until a replacement was found. Testimony at the hearing before this Court, however, indicated that this was not the understanding that some of the Council members had. Warren Tobey testi-

fied that he did not vote to continue Judge Whitehead's service and did not find out about it until approximately two weeks later. Tribal Chairman Mervin Wright also testified that there was no discussion of Judge Whitehead continuing and that it was his understanding that the resignation would be effective as of the date reflected in the resignation letter. Carmen Tobey, also a member of the Tribal Council testified that he did not think that the Tribal Council intended that Judge Whitehead continue as judge until a replacement could be found.

On the other hand and in addition to the clear reading of the Tribal Council meeting minutes, Roy Garcia, also a member of the Tribal Council and then Tribal Chairman, testified that it was his understanding that the Tribal Council did want Judge Whitehead to continue. He recalled that no one objected to the minutes or later when Judge Whitehead continued presiding over cases on the reservation. Further, Judge Whitehead, by affidavit, states that he was called and personally asked to help the Tribal Council out and conduct court business beyond the date of his resignation. Whitehead affidavit.

Judge Whitehead continued to receive paychecks after his resignation. This required the Clerk of the Court and courtroom deputy, Margaret Houton, to submit time sheets of Judge Whitehead's hours to the Tribal Treasurer who then issued a paycheck. Each check had to be signed by two people and the Tribe designated the check signers. The Tribal Chairman is one of those who signs the checks. Roy Garcia testified that all of the members of the Tribal Council are advised of how much is paid by the Treasurer and when the checks are issued. He did, however, testify that the Tribal Council was not informed specifically that Judge Whitehead continued to be paid. Nevertheless, the continued payment for Judge Whitehead as a judge through the normal channels of the Tribe is strong evidence that the Tribal Council approved the continued service of Judge Whitehead.

Even those members of the Tribal Council who testified that they objected to Judge Whitehead continuing to preside, did nothing to stop him even though they testified that they were aware of his continued service. No interim judge was appointed and court was held on Mondays and Thursdays. This supports the apparent agreement that "Jerry is going to sit in until we get a new judge."

Also supporting Judge Whitehead's *de facto* authority is that petitioner, who was ably represented by counsel, made no objection at the trial and subsequent sentencing to Judge Whitehead presiding. *See* Minutes of Petitioner's Trial. The minutes of the August 3, 1984, Tribal Council meeting do reflect that petitioner himself did question Judge Whitehead's authority in a letter to the Tribal Council. Petitioner's brief, Exhibit # C. However, there is no evidence that a formal objection was ever made.

CONCLUSION

There is no question that prior to March 15, 1984, Judge Whitehead served as tribal judge pursuant to constitutional and statutory provisions. It is also apparent that Judge Whitehead, acting in good faith and with only the best intentions of aiding the Tribe, conducted petitioner's trial under the belief that he had authority to do so.

Although the theory of a *de facto* judge seems to be an anomaly to this Court, the circumstances surrounding Judge Whitehead's continued service does in fact rise to the level of a *de facto* judge. He had constitutional and statutory authority prior to his resignation, his continued service was in good faith, and no objections were made at the time of the trial. Thus, Judge Whitehead had authority to preside over petitioner's trial and sentencing.

IT IS, THEREFORE, HEREBY ORDERED that the petition for writ of habeas corpus is DENIED.